In re Guardianship of Bentert: Bentert, Appellant, vs. Wahl, Guardian, Respondent.

*May 9—June 15, 1951.*

For the appellant there was a brief by *A. M. Chudnow* and *Mathew Horwitz,* both of Milwaukee, and oral argument by *Mr. Chudnow.*

For the respondent there was a brief by *Dakin & Dierker* of Watertown, attorneys, and *George A. Hartman* of Juneau of counsel, and oral argument by *Mr. Hartman.*

HUGHES, J. The record discloses that the petitioner was born February 20, 1879, the ninth of ten children. His father died in 1890, his mother in 1925. Apparently all of the children except petitioner and three others died before attaining maturity. A brother, Arthur, died in 1943; a sister, Mrs. Winger, died in 1946, and a brother, Herman, died in 1947. Herman is the only one survived by children.

Oscar lived upon the family farm until 1943. It was managed by his mother until her death in 1925 and thereafter by Arthur. In 1943 when Arthur died there was some difficulty about the management of the farm. Oscar took the position that it belonged to him and resented the activities of the representative of Arthur's estate. About six months after the death of Arthur, upon the petition and hearing, it was determined that Oscar was insane and he was committed to the Winnebago State Hospital. He had been previously committed in 1908 and again in 1909.

At the hearing in 1943 it was established that Oscar neglected the cattle and crops. Counsel for appellant contends that the trial court erred in admitting the testimony adduced upon the 1943 hearing and reviewing such testimony in connection with that taken upon the hearing on the present petition.

Counsel concedes that petitioner has peculiar habits, but contends that, at most, they establish that he is eccentric and a man of strong character.

Since the death of his mother appellant has lived in Watertown in the home of his sister, Mrs. Winger, which he inherited upon her death. The estate of appellant in addition to the home consists of property aggregating in value approximately $80,000. During the time that petitioner has been under guardianship he has lived in want. He refuses to accept money from the guardian and insists that he will have the entire estate at his disposal.

Although he has lived in Watertown since 1944 he insists upon getting his mail at Ixonia. While this entails walking the eight or ten miles once or twice a week, he considers it worth while because when one changes his post-office address too often he gets to be considered a transient. He mails his letters on the train at the depot rather than at the post office, although the depot is a half mile more distant from his home, because they go faster that way. He walks to Ixonia because he has never been able to make the transition from horse and wagon to automobile because too many people are killed in automobiles. He apparently is not familiar with the statistics on pedestrians.

At the time of coal rationing his sister bought a heating stove and shut down the central heating system with which the house was equipped. After her death appellant removed the radiators.

The witnesses who testified that they believed appellant competent to handle his own estate admitted that they came

to that conclusion mostly on hope; appellant has never accumulated or handled more than a hundred dollars at any time in his life.

The nature of the testimony is indicated by the recital above.

An examination of the entire record strongly supports the trial court's conclusion: "His appearance and habits and thinking deviate so much from normal that they cannot be explained by saying that he is eccentric and stubborn. He is incapable of weighing and considering matters, and arriving at a rational judgment."

The hearing upon the petition was exhaustive. There is no indication that the trial court referred to the testimony of 1943 except for background or that its conclusions herein could have been different without the 1943 record. There was no error in its admission.

*By the Court.*—Judgment affirmed.